No. 22-35474

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID G. DONOVAN, *et al.*

*Plaintiffs-Appellants*,

v.

JOSEPH R. BIDEN, *et al.*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Washington
No. 4:21-cv-05148-TOR
Hon. Thomas O. Rice

---

## APPELLANTS' REPLY BRIEF

---

Nathan J. Arnold
Arnold & Jacobowitz PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221
Nathan@CAJlawyers.com

Simon P. Serrano
Silent Majority Foundation
5238 Outlet Dr
Pasco, WA 99301-8969
(509) 567-7083
pete@silentmajorityfoundation.org

*Attorneys for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................ iii

TABLE OF AUTHORITIES .................................................... iv

I.      INTRODUCTION ....................................................................1

II.     REPLY ARGUMENT ..........................................................5

        A. The District Court had Subject Matter Jurisdiction over the Contractor

        Employee Appellants' Claims..........................................................5

        B. The Executive Orders are Not Authorized by the Procurement Act ...........

        ...........................................................................................8

        C. Appellants Sufficiently Plead RFRA Claims...........................................12

        D. Appellees Err in Dismissing the Major Questions Doctrine ...................16

III.    CONCLUSION.............................................................................19

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. Kahn*, 618 F.2d 784, 793 (D.C. Cir. 1979) .........................................12

*Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir.2003)).................7

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)...........................
.................................................................................................................................13

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 n.3, 726, 728 (2014) ..........
.................................................................................................................................14

*Cutter v. Wilkinson, 544 U.S.*(2005) .......................................................................14

*Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) ........................................7, 8

*Doster v. Kendall*, 54 F.4th 398, 421 (6th Cir. 2022)........................... 2, 3, 4, 13, 15

*Employment Division v. Smith*, 494 U.S. 872 (1990) ...................................... 14, 15

*Georgia v. Biden*, No.: 21-14269, * 27, 11th Circuit August 26, 2022) ....................
................................................................................................................... 2. 8, 18

*Georgia v. President of the United States*, 46 F.4th 1283, 1293 (11th Cir. 2022). .....
................................................................................................................... 2, 8, 9, 18

Goldman v. Weinberger, 475 U.S. (1986) ...............................................................15

*Kentucky v. Biden*, 23 F.4th 585, 609–10 (6th Cir. 2022). ....................... 8, 9, 10, 17

*Louisiana v. Biden*, 55 F.4th 1017, 1033 (5th Cir. 2022)................... 2, 9, 11, 12. 17

*Maracich v. Spears*, 570 U.S. (2013) ....................................................................12

*Sambrano v. United Airlines, Inc.*, 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022)............................................................................................................13

*Tanzin v. Tanvir,* 141 S. Ct ......................................................................................6

*United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 815–16 (2000)..................3

*U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077 (5th Cir. 2022)...............................6

*UAW-Labor Emp. and Training Corp. v. Chao*, 325 F.3d 360, 366-67 (D.C. Cir. 2003) ........................................................................................................... 10, 12

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) ................................................7

**Statutes and Regulations**

40 U.S.C. § 101 .......................................................................................8, 9

42 U.S.C. § 2000bb ...................................................................................1

42 U.S.C. § 2000bb-1(a) ..........................................................................14

42 U.S.C. § 2000bb-1(b) ............................................................................3

5 U.S.C. § 551 ...........................................................................................8

86 Fed. Reg. at 50,985 ..............................................................................10

EO 14042, *Executive Order on Ensuring Adequate COVID Safety Protocols for Federal Contractors* ..................................................................2, 7

Exec. Order No. 11,246, 30 Fed. Reg. 12,319, 12,319 (Sept. 28, 1965) (forbidding civilian contractors from discriminating on the basis of race, creed, color, or national origin); Exec. Order No. 12,800, 57 Fed. Reg. 12,985, 12,985 (Apr. 14, 1992) ................................................................................................9

**Other Authorities**

Religious Land Use and Institutionalized Persons Act ("RLUIPA") ............... 13, 14

v

# I.    INTRODUCTION

The District Court had subject matter jurisdiction over the Plaintiffs-Appellants. The Civil Service Reform Act does not apply to the Contractor Employee Appellants; and Appellees concede that seven of the Contractor Employee Appellants alleged harm sufficient for standing. Appellees, like the District Court, erroneously read the Second Amended Complaint with a jaundiced and skeptical eye and infer that the "remaining plaintiffs…have not had their requests conclusively resolved."    Appellee's BR., 13-14. Even were that the case, Appellants' Free Exercise rights were violated, under both the First Amendment of the United States Constitution and the Religious Freedom Restoration Act, 42 USC § 2000bb, *et seq.* ("RFRA").

Furthermore, most if not all the other Appellants, pled sufficient facts to demonstrate standing based on the Hobson's Choice presented by the Executive Orders ("EO"): Appellants were required to either violate their religious beliefs or become, and remain, subject to Defendants' coercive threat to their employment. *See* ER026–120 (Second Amended Complaint alleging Appellants' individualized circumstances).

Appellants also sufficiently plead claims to warrant relief under the Procurement Act.  As the Eleventh and Fifth Circuit Courts of Appeal recently held, unlimited Presidential power to regulate every aspect of the lives of federal

contractors and their employees exceeds the scope of the Procurement Act, which merely authorizes the President to set necessary policy to improve economy and efficiency in federal contracting. The Eleventh Circuit held that the "delegation to carry out those provisions does not grant the President free-wheeling authority to issue any order he wishes relating to the federal government's procurement system. What he can lawfully carry out under § 121(a) are the provisions in a specified part of the U.S. Code." *Georgia v. President of the United States*, 46 F.4th 1283, 1293 (11th Cir. 2022). The Fifth Circuit held that:

> Congress has not spoken clearly to authorize such a dramatic shift in the exercise of the President's power under the Procurement Act. Nor are historical exercises of that power sufficient to demonstrate a long-standing understanding that the Procurement Act could be used in this way. The President's use of procurement regulations to reach through an employing contractor to force obligations on individual employees is truly unprecedented. As such, Executive Order 14042 is unlawful, and the Plaintiff States have consequently demonstrated a strong likelihood of success on the merits.

*Louisiana v. Biden*, 55 F.4th 1017, 1033 (5th Cir. 2022).

Appellants' allegations that they each asked for religious exemptions, which were, in most instances, nominally granted, sufficiently pleads a substantial burden on their religious freedom. Like the Air Force personnel in *Doster v. Kendall* who were required by the Air Force "to participate in deposition-style inquiries into their beliefs," Plaintiffs were required to place their religious beliefs on display to unknown members of management who made the determination of whether the

beliefs were adequately "sincere." *Doster v. Kendall*, 54 F.4th 398, 421 (6th Cir. 2022). Appellees now double down on their invasion of rights by demanding that Appellants submit their beliefs for judicial review.

Under RFRA, once an individual claims Government discrimination, the burden shifts to the Government to pass the rigorous "strict-scrutiny" standard, which is a "gauntlet" the Government will successfully run "only in 'rare cases.'" *Doster*, 54 F.4th at 419 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)). Under the strict scrutiny standard, the Government must show a compelling interest in its action and then "prove that its action qualifies as the 'least restrictive means' to further its interest." *Id.* at 420 (quoting 42 U.S.C. § 2000bb-1(b)(2)). Moreover, the Government's "interest" must be real, not "made-for-litigation." *Id.* The "least restrictive means" test requires a showing by the Government "that every other possible 'alternative will be ineffective to achieve its goals," and "if any less-restrictive alternative exists, the government 'must use it.'" *Id.* (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815–16, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000)).

Here, Appellees implemented the Orders, which mandated medical procedures from which Appellants sought exemptions on religious bases, and there is no plausible claim that Appellants applied the least restrictive means to advance a

legitimate government interest. As with *Schelske v. Austin*, the Government cannot meet its "burden by pointing to the need for military [or mission] readiness and the health of its force" as such "generalized interests are insufficient." Rather, the Government "must justify denying these particular plaintiffs' religious exemptions under current conditions." *Schelske v. Austin*, No. 6:22-CV-049-H, 2022 U.S. Dist. LEXIS 229432, at *3 (N.D. Tex. Dec. 21, 2022); *and see Doster*, 54 F.4th at 421 ("Under RFRA, however, the Air Force must show that it has a compelling interest in refusing a 'specific' exemption.")

Where Appellants expressly alleged that the vaccine mandate does not prevent the spread of COVID-19 and raised specific ways the mandate could have been more narrowly tailored to avoid infringing on their rights, Opening Br. at 47–51, Appellees must refute these assertions. Arguing that the EOs assist in meeting mission "readiness" falls woefully short of Appellees' burden. As the Sixth Circuit held, the Government "bears the burden of showing that no alternative means exist for each Plaintiff." *Doster*, 54 F.4th at 425 (*citing Ramirez v. Collier*, ––– U.S. —, 142 S. Ct. 1264, 1281, 212 L.Ed.2d 262 (2022).

As Appellees have conceded that the challenged EOs and the underlying vaccine failed to prevent the spread of COVID-19, Appellees have failed to carry their threshold burden of showing that the EOs were the least restrictive means. For these reasons, the District Court's erroneous decision must be overturned.

4

## II.     REPLY ARGUMENT

### A.     The District Court had Subject Matter Jurisdiction over the Contractor Employee Appellants' Claims.

Appellees concede that "seven contractor plaintiffs alleged that they suffered a concrete and imminent threat of injury sufficient to establish subject-matter jurisdiction." Appellees' Br. at 27. While Appellees did not identify these specific Appellants, six Contractor Appellants are listed in the Second Amended Complaint, *id.*, and a seventh federal employee is identified. *See* 2 ER 248 ¶ 67. As to at least the six Contractor Appellants, there seems to be no dispute that they have standing, and that the District Court had subject matter jurisdiction over their claims.

All, or nearly all of the other 300 Contractor Employee Appellants, also have standing. Appellees mischaracterize the record by arguing that, for instance, ¶ 73 of the Second Amended Complaint identifies an Appellant who has "not requested exemptions." (Appellees' Br. at 26). In fact, the Second Amended Complaint alleges in plain language that Appellant Diedrich "submitted a religious exemption [request] on October 20, 2021" and received a temporary, conditional accommodation from his employer. 2 ER 44–45 ¶ 73. Appellants unambiguously pled the temporary, transitory, discretionary, and conditional nature of Diedrich and other Appellants' accommodations. *Id.*; 2-ER-031–34, 038, 046–49, 053–55, 058–59, 082, 087–94, 243, 244, 253, 258, 26, 261, 263, 265, 271, 276.

Likewise, despite Appellees' vague reference to "many contractor plaintiffs with pending exemption requests" (Appellees' Br. at 25), nearly all Contractor Employee Appellants expressly alleged that they had been "provided no accommodation" or were "not provided an accommodation." *See* 2 ER 31–93. True, many of them hoped that they were only "originally" refused, *id.*, and that their employers will reverse that decision, but Appellees' conclusion that this means those Appellants are not imminently threatened with loss of employment has no basis. To date, the EOs remain in place and enforceable; that certain employers may have paused individualized enforcement does not change the facts: Appellants have "allege[d] constitutional violations of the First Amendment and RFRA, which 'secures Congress' view of the right to free exercise under the First Amendment[.]'" *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 347 (5th Cir. 2022) *citing Tanzin v. Tanvir,* 141 S. Ct. 486, 489, 208 L. Ed. 2d 295 (2020). Accommodations have been denied, and they remain denied. Unless Appellees withdraw the mandate or the District Court grants relief, *nothing* more than employers' non-binding decision to suspend enforcement of the challenged EOs stands between Appellants and termination. Appellees' assumption otherwise is mere conjecture. Appellants experience a daily imminent threat of termination remains, resulting in a situation where standing cannot be nullified. Appellees assert the *possibility* of removal of the potential injury at a later time, but the fact remains that the harm, threat of

termination, is a recurring daily event for all Appellants. The current circumstances demonstrate that Appellants experience a daily, recurring, concrete harm that supports their standing claims.

Appellees' reliance on *Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) is misplaced: This Court in that case held that Mr. Wolfson, a prospective candidate for judicial office, had stated a ripe First Amendment claim where he wished to speak in a way forbidden by his state's judicial ethics code. This Court did not require Mr. Wolfson to have been specifically threatened with enforcement, or even to have broken the code yet. *Wolfson*, 616 F.3d at 1058 ("the Court has endorsed a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.") (quoting *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir.2003)). *A fortiori*, Appellants, who have already refused vaccination, putting themselves in the crosshairs of disciplinary measures under EO 14042, have stated a ripe claim.

## 1. While Federal Employees are subject to the Civil Service Reform Act, this does NOT bar these Employees from advancing RFRA claims to protect their interests.

The Federal Employee Appellants—all 8 of them—concede that their claims are within the scope of the CSRA. Nonetheless, 40 years of jurisprudence in this Circuit holds that administrative exhaustion is "not an absolute bar to judicial

consideration," especially where "[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) (remanding a military discharge case that the District Court dismissed for lack of administrative finality with the requirement that the district court "consider the constitutional issues."). *Id*. In *Downen*, Plaintiffs' complaint rested "solely upon the resolution of her constitutional claim," and because of this basis, Plaintiff "was not barred from District Court through her failure to exhaust administrative remedies." *Id.* Similarly, the 8 federal employees have claimed constitutional violations and need not await a CSRA final decision in light of their allegations of constitutional violations. And, the Contractor Employee Appellants' claims are not governed by the CSRA in the first place, because they are not civil servants. *See* 5 U.S.C. § 7511 (statute applies to certain "individual[s] in the competitive service" or the "excepted service."). This Court should remand to the district court for development of *all* Appellants' constitutional and RFRA claims.

**B.      The Executive Orders are Not Authorized by the Procurement Act.**

Appellees fail to distinguish this case from *Kentucky v. Biden*, 23 F.4th 585, 609–10 (6th Cir. 2022), and *Georgia v. President of the United States*, 46 F.4th 1283, 1296–97 (11th Cir. 2022), in which two of this Court's sister Courts of Appeal held that the EOs far exceed the Federal Property and Administrative Services Act of

1949 ("Procurement Act"), 40 U.S.C. § *101 et seq*.  Appellees, instead insist that

both of those Courts completely misunderstood the scope of the Procurement Act.

Not so.

As the Eleventh Circuit reasoned:

> what the Procurement Act is all about—creating an 'economical and efficient system' for federal contracting…. is worlds away from conferring general authority for every agency to insert a term in every solicitation and every contract establishing health standards for contractors' employees…. An all-encompassing vaccine requirement is different in nature than the sort of project-specific restrictions contemplated by the Act. Like other enabling legislation, this statute is not an 'open book' to which contracting agencies may 'add pages and change the plot line.'

*Georgia*, 46 F.4th at 1296 (quoting 40 U.S.C. § 101; and quoting *West Virginia v.*

*EPA*, –––– U.S. ––––, 142 S. Ct. 2587, 2609, 213 L.Ed.2d 896 (2022)).

The federal government is not just another contracting party, and its

mandatory contracting policies, procedures, and terms and conditions cannot be

ignored as non-regulatory.  "The Department of Labor has suggested that roughly

'one-fifth of the entire U.S. Labor Force' is 'employed by federal contractors.'"

*Louisiana*, 55 F.4th at 1028 (quoting Dep't of Labor, *History of Executive Order*

*11246*, perma.cc/6ZXJ-WGR); *see also Kentucky v. Biden*, 23 F.4th 585 at 589 (6th

Cir. 2022). The very loose "nexus" standard endorsed by the D.C. Circuit, which

Appellees urge this Court to adopt, would allow a President to regulate literally any

aspect of that vast population's practices, so long as he can gin up some attenuated,

speculative connection to efficiency, "This is the House that Jack Built" style. *See UAW-Labor Employment & Training Corp. v. Chao*, 325 F.3d 360, 366–67 (D.C. Cir. 2003) ("The link may seem attenuated … and indeed one can with a straight face advance an argument claiming opposite effects or no effects at all. But…under *Kahn*'s lenient standards, there is enough of a nexus.") A standard so loose is no standard at all, merely a refusal to respect Congress's intent.

This Sixth Circuit rightly rejected that approach earlier this month when it "decline[d] the government's invitation to construe § 121(a) as authorizing the President to ignore the limits inherent in the [Procurement] Act's operative provisions in favor of an 'anything-goes' pursuit of a broad statutory purpose." *Kentucky v. Biden,* No. 21-6147, 2023 WL 164614, at \*5 (6th Cir. Jan. 12, 2023) ("*Kentucky II*"). The Court held that the Contractor EO impermissibly lacks a nexus to federal contracting policy and rejected the Government's rhetorical sleight-of-hand of "equating contrac*tor* efficiency with the efficiency of government contrac*ting*." *Id.* at \*6 (emphasis in original). The Court then concluded: "The [Procurement] Act does not authorize the President to issue directives that simply 'improve the efficiency of contractors and subcontractors.'" *Id.* at \*7 (quoting 86 Fed. Reg. at 50985).

Appellees urge this Court to find, however, that the President's plain statement of his purpose, first and foremost, to (supposedly) advance public health,

rather than economy and efficiency in government contracting, is irrelevant—that no matter how clear it may be that the "nexus" is a mere pretext tacked on to justify a totally different policy goal, this Court must uphold the President's action. The President, on Appellees' theory, through the Procurement Act, was vested by Congress with tyrannical powers over federal contractors and their employees, free to order them to do whatever he thinks best under the guise of "federal contracting."

As the Fifth Circuit recently held in upholding an injunction of the Contractor EO, the "federal contractor mandate is neither a straightforward nor predictable example of procurement regulations authorized by Congress to promote 'economy and efficiency.'… At issue in this case, though, is not whether the federal government may (analogously) force its employees to get vaccinated against COVID-19, but whether the federal government may place such a requirement in its contracts with third parties, including the Plaintiff States. The Government has provided no examples of such contracts in the private sector." *Louisiana v. Biden*, 55 F.4th at 1033. That Court then placed its shut the Contractor EO's coffin: "Most significantly, unlike the non-discrimination, E-Verify, *Beck* rights, and sick leave orders, which govern the conduct of *employers*, the vaccine mandate purports to govern the conduct of *employees* — and more than their conduct, purports to govern their individual healthcare decisions." *Id.* at 1030. The Fifth Circuit nailed the coffin shut:

> The vast scope of its mandate belies that contention. There is little internal about a mandate which encompasses even employees whose sole connection to a federal contract is a cubicle in the same building as an employee working 'in connection with' a federal contract — especially as the Supreme Court has called the phrase 'in connection with' 'essentially 'indeterminat[e]' because connections, like relations, 'stop nowhere.'

*Id.* at 1033 (quoting *Maracich v. Spears*, 570 U.S. 48, 59, 133 S. Ct. 2191, 186 L. Ed. 2d 275 (2013) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995) (internal quotation marks omitted)).  Thus, Appellees' (and the District Court's) reliance on such cases as *UAW-Labor Emp't & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003), *AFL-CIO v. Kahn*, 618 F.2d 784, 790 (D.C. Cir. 1979) (en banc), and *American Federation of Government Employees v. Carmen*, 669 F.2d 815 (D.C. Cir. 1981) is misplaced (*see* Appellees' Br. at 38, 47) as those cases involved regulation of the contractor conduct rather than contractors employee conduct.  *See Louisiana v. Biden*, 55 F.4th at 1030 (distinguishing *Chao* and *Kahn*).

The Procurement Act, simply put, was never intended to grant the President despotic authority over personal health-care decisions of millions of workers simply because their employers want a federal contract.

### C.    Appellants Sufficiently Plead RFRA Claims.

Appellees do not seriously argue that the EOs at issue use the least restrictive means, or even effectively advance public-health goals, nor can they.  Appellants

clearly pled (and can prove) otherwise. In this respect, this case is strikingly similar to *Doster*, where the Sixth Circuit held that the "Air Force has failed to show that it has a compelling interest in forcing the Plaintiffs to get vaccinated on threat of punishment or that this action is the least restrictive means to serve such an interest." *Doster*, 54 F.4th at 421. Instead, Appellees, and the District Court, take the position that to state a claim under RFRA, a plaintiff must "identif[y] 'the religious activities they were engaged in, [and] how those activities were substantially burdened by'" government action. Appellees' Br. at 34 (quoting 1-ER-13) (brackets added). But Appellants (all but two) were quite clear that they each sought an exemption from the vaccine mandate based in most instances on their sincere religious beliefs, and that most of those exemptions were nominally granted, albeit without accommodation, which confirms that the Appellants had established the existence of a religious belief which would be burdened by accepting vaccination. *See* 2 ER 31–93. Simply put, "plaintiffs had suffered irreparable harm from being coerced into 'a choice between their job(s) and their jab(s),' *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), or 'between their beliefs and their benefits,' *Sambrano*, 19 F.4th at 841 (Ho, J., dissenting)." *Sambrano v. United Airlines, Inc.*, 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022).

What Appellees and the District Court are really asking for, is an apologia, an explanation satisfactory and comprehensible to someone with different beliefs, as

to the doctrinal basis for Appellants' avoidance of vaccination. That inquiry, RFRA does not and cannot demand. Just as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), "does not differentiate among bona fide faiths," *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S. Ct. 2113, 161 L.Ed.2d 1020 (2005), neither does RFRA. RFRA provides, in sweeping language: "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." 42 U.S.C. § 2000bb-1(a). Nowhere in the statute is the Government (or this Court) given the power to evaluate the person's exercise. This was made clear by the Supreme Court in *Burwell v. Hobby Lobby*, where the Court held that an inquiry into the "whether the religious belief asserted in a RFRA case is reasonable" is a "question that the federal courts have no business addressing." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724, 134 S. Ct. 2751, 189 L.Ed.2d 675 (2014). Here, the **sincerity** of Appellants' religious beliefs preventing vaccination is implied by their allegations that they were granted exemptions, however nominally. The District Court's (and Appellees') demand that they further "identify" (*i.e.*, explain) their religious practice at issue defies *Burwell*.[1]

---

[1] To be clear, an "exercise of religion" protected by RFRA may consist of inaction. The Supreme Court has long recognized that "a State would be 'prohibiting the

But even if such a doctrinal primer were called for in making a RFRA claim, the District Court further erred in not granting leave to amend to clarify the nature of the religious practice at issue, which some Appellants would be willing to explain further.

Appellees' and the District Court's haphazard approach to Appellants' RFRA claims may have sufficed under the rational-basis review espoused in *Goldman v. Weinberger*, but it fails under RFRA. *See: Goldman v. Weinberger*, 475 U.S. 503, 106 S. Ct. 1310, 89 L. Ed. 2d 478 (1986). On its rejection of *Goldman* under RFRA claims, the Sixth Circuit was clear: "Although *Goldman* rejected *Sherbert's* strict-scrutiny test in the military context (at least for a military regulation that was arguably neutral and generally applicable), RFRA requires the government to meet that test for all actions that substantially burden religious exercise, including actions by a military 'branch.'" *Doster,* at 40-41. Thus, as strict scrutiny *is* the appropriate inquiry, and Appellees failed to make a showing that accommodations, exempting

---

free exercise [of religion]' if it sought to ban such acts *or abstentions* only when they are engaged in for religious reasons, or only because of the religious belief that they display." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (emphasis added, bracketed text in original, quoting *U.S. Const. Amend. 1. Cl. 1*).

individuals from the Executive Orders' requirements was the least restrictive means, the EOs fail under RFRA.

### D. Appellees Err in Dismissing the Major Questions Doctrine.

This case addresses fundamental rights, policy, and laws that span the entire United States, including one-fifth of the Nation's workforce (and likely nearly 30% of that workforce when federal employees are included). With such an expansive reach into the workforce, the question becomes whether the challenged EOs are an "unheralded power representing a transformative expansion of [] regulatory authority." *West Virginia v. EPA*, 142 S. Ct. 2587, 2595, 213 L.Ed.2d 896, 903 (2022). Clearly, they are. As with the EPA in *West Virginia v. EPA* Appellants' launched the EOs to "adopt a regulatory program that Congress had conspicuously declined to enact itself." *Id.* Such circumstances are ripe for a major questions doctrine analysis as the challenged EOs constitute "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *Id.*, at 2609. Finally, as with the EPA in *West Virginia*, the EOs "empower[] it [the government] to substantially restructure the [] []market." *Id.* at 2610. Each of these characterizations squarely fit.

Appellees defend the Contractor EO as "an exercise of the federal government's proprietary authority, as the purchaser of services from federal contractors, and one that applies only to those workplaces where work on federal

contracts is taking place." Appellants' Br., 49. Not so. Appellants have already addressed the Procurement Act in great detail and have cited, *Kentucky, II* and *Louisiana*, *supra*, and have demonstrated that the EOs reach beyond the workplace. As the Supreme Court held: "A vaccination, after all, 'cannot be undone at the end of the workday.' [] Contrary to the dissent's contention, imposing a vaccine mandate on 84 million Americans in response to a worldwide pandemic is simply not 'part of what the agency was built for.'" *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 142 S. Ct. 661, 665, 211 L.Ed.2d 448, 454 (2022) *citing In re MCP No. 165*, 20 F. 4th, at 274 (Sutton, C. J., dissenting).

As the sister Court held in *Louisiana v. Biden*, this case is not about "whether the federal government may (analogously) force its employees to get vaccinated against COVID-19, but whether the federal government may place such a requirement in its contracts with third parties." *Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022). As with the Fifth Circuit, this Court should reject that notion without question. The Fifth Circuit's rejection is clear: "[t]he Government has provided no examples of such contracts in the private sector." *Id.* The Court then concluded that the Contractor EO "purports to govern [] individual healthcare decisions," rather than employee conduct, and if the Court were to allow such a mandated to remain it's decision would effectively "ratify an 'enormous and transformative expansion in' the President's power under the Procurement Act." *Id. see also: Kentucky v.*

*Biden, II*, 23 F.4th 585, 607 (6th Cir. 2022) ("the Property Act unambiguously excludes the purported power…the government has propounded *no* relevant history showing that it has ever wielded the Property Act to mandate 'vaccination and medical examinations' or to 'control [] the spread of disease."). Because the EOs reach far beyond the workplace and because they represent such a departure from Congress's intent under the Procurement Act, the EOs are an "enormous and transformative expansion" in that granted power, and such transformation squarely falls within the major questions analysis.

The major question inquiry and conclusion is succinctly stated in *Georgia v. Biden*, which held that the Court's central inquiry question is: "whether Congress delegated the power to require widespread vaccination through the Procurement Act." To that question, the answer is: "[a]ll signs suggest that Congress has retained this power rather than passing it on." *Georgia v. President of the United States*, 46 F.4th 1283, 1301 (11th Cir. 2022). This Court should view the question of whether President Biden exceeded his Procurement Act authority in adopting and implementing the EOs as a major questions that fits within this court's purview. Upon taking up such question, the Court should conclude, as its sister courts have, that the President has exceeded that authority.

## III. CONCLUSION

For the reasons set forth above and in Appellants' opening brief in this Court, this court should reverse the District Court's dismissal of Appellants' claims and remand for further proceedings and trial.

**DATED** this 23rd day of January 2023.

### ARNOLD & JACOBOWITZ PLLC

/s/ Nathan J. Arnold

Nathan J. Arnold, WSBA No. 45356
2701 First Ave., Ste. 200
Seattle, WA 98121
(206) 799-4221
Nathan@CAJLawyers.com

### SILENT MAJORITY FOUNDATION

/s/ Simon P. Serrano
Simon Peter Serrano, WSBA No. 54769
Silent Majority Foundation
5238 Outlet Dr
Pasco, WA 99301
(530)906-9666
pete@silentmajorityfoundation.org

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **4,327 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

**DATED** this 23rd day of January 2023.

**ARNOLD & JACOBOWITZ PLLC**

/s/ Nathan J. Arnold

Nathan J. Arnold, WSBA No. 45356
2701 First Ave., Ste. 200
Seattle, WA 98121
(206) 799-4221
Nathan@CAJLawyers.com

**SILENT MAJORITY FOUNDATION**

/s/ Simon P. Serrano

Simon Peter Serrano, WSBA No. 54769
Silent Majority Foundation

5238 Outlet Dr
Pasco, WA 99301
(530)906-9666
pete@silentmajorityfoundation.org

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

**DATED** this 23rd day of January, 2023.

*/s/ Madeline Johnson*
Madeline Johnson, Paralegal